## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

K.R. LACEY,
*individually and on behalf of all others
similarly situated*,

      Plaintiff,

      v.

MERCEDES-BENZ USA, LLC,
DIMITRIS PSILLAKIS,
SCOTT WEBER and
EURO MOTORCARS GERMANTOWN,
LLC,

      Defendants.

Civil Action No. 24-2770-TDC

## MEMORANDUM OPINION

Plaintiff K.R. Lacey has filed this putative class action on behalf of herself and similarly situated individuals against Defendants Mercedes-Benz USA, LLC ("MBUSA"), MBUSA Chief Executive Officer ("CEO") Dimitris Psillakis, Euro Motorcars Germantown, LLC ("EMG"), and EMG General Manager Scott Weber. In the Complaint, Lacey asserts a claim under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–101 to 13–320 (LexisNexis 2013), a claim of a breach of the implied warranty of merchantability, and a state common law claim of fraudulent concealment arising from the failure to disclose an alleged defect in the engine of a Mercedes-Benz vehicle she purchased from EMG. Defendants have filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In June 2019, Lacey purchased a "Certified Pre-Owned 2015 Mercedes-Benz GL550" ("the GL550") from EMG, a car dealership located in Montgomery County, Maryland. Compl. ¶ 15, ECF No. 5. In October 2022, after Lacey had logged approximately 35,000 miles in the GL550, the vehicle's engine shuddered and lost power while she was driving on a freeway. Lacey took the GL550 to Mercedes-Benz of Hagerstown, Maryland for evaluation on three separate occasions. In July 2023, Lacey was informed that the GL550 required an engine replacement. Lacey took the GL550 to a second Mercedes-Benz dealership that performed a "borescope evaluation" that confirmed that the GL550 had experienced a complete engine failure. *Id*. ¶¶ 19–20. Despite Lacey's repeated requests to MBUSA and EMG, neither assumed responsibility for the repair costs, which amounted to approximately $40,000.

According to Lacey, the GL550 experienced "premature engine failure due to a defect in the M278 engine, specifically involving the use of aluminum-silicon cylinder coating." *Id*. ¶ 22. Lacey alleges that, prior to her purchase of the GL550, Defendants were "well-aware of this defect" because it had been discussed in "numerous online videos, blogs, internal corporate Mercedes-Benz memoranda, and technical journals." *Id*. ¶ 23. She further asserts that despite this awareness, "all Defendants engaged in fraudulent concealment of the engine defect, resulting in financial harm and diminished value of the vehicle." *Id*. ¶ 27.

On July 22, 2024, Lacey filed the class action Complaint in this case, which she brought "to seek redress for herself and similarly situated Maryland owners and lessees of [Mercedes-Benz] vehicles equipped with the M278 engine," in the Circuit Court for Montgomery County, Maryland. *Id*. ¶ 24. On October 26, 2024, Defendants removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). In the Complaint, Lacey alleges three causes of action against all Defendants in the following numbered counts: (1) a violation of the MCPA

based on the alleged fraudulent concealment of the alleged defect in the GL550's engine; (2) a breach of the implied warranty of merchantability; and (3) a common law claim of fraudulent concealment. Lacey seeks compensatory and punitive damages, injunctive and declaratory relief, restitution and disgorgement of "ill-gotten gains," attorney's fees and costs, and pre- and post-judgment interest. Compl. at 8.

## DISCUSSION

In the Motion to Dismiss, Defendants seek dismissal of Psillakis as a defendant based on insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and dismissal of MBUSA and Psillakis as defendants for lack of personal jurisdiction pursuant to Rule 12(b)(2). Defendants also seek dismissal of the Complaint for failure to state a claim pursuant to Rule 12(b)(6) on the grounds that: (1) Lacey has failed to meet the heightened pleading standard for fraud-based claims as set forth in Rule 9(b); (2) Lacey's claims are barred by the economic loss rule; (3) the claim for a breach of the implied warranty of merchantability is barred by the statute of limitations; and (4) Lacey has otherwise failed to allege viable causes of action. Defendants also argue that the class action should be dismissed because Lacey cannot adequately represent the class and because the class definition is improper. Finally, Defendants asserts that several of the remedies sought by Lacey are unavailable in this case.

### I.    Personal Jurisdiction

The Court first addresses the argument by Defendants that the claims against MBUSA and Psillakis should be dismissed for lack of personal jurisdiction.

#### A.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's burden to establish personal jurisdiction. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

3

Generally, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to the court's jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the plaintiff's showing, a court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Mylan Laboratories, Inc.*, 2 F.3d at 59-60. The court may consider affidavits and other submitted evidence in resolving a Rule 12(b)(2) motion. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009).

Under Rule 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

The Maryland long-arm statute generally authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *Krashes* v. *White*, 341 A.2d 798, 804 (Md. 1975). Thus, the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) (stating that although the "long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to . . . dispense with analysis under the long-arm statute").

4

In light of these principles, the Court will primarily address the due process requirements but will address the Maryland long-arm statute to the extent necessary to complete the jurisdictional analysis.

**B.    Due Process**

Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may be exercised over a party upon a showing that the party has sufficient "minimum contacts" with the forum state such that "maintenance of the suit [in the state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, (1940)). In assessing the presence of minimum contacts, courts distinguish between two types of personal jurisdiction: general and specific.

**1.    General Jurisdiction**

A court has general personal jurisdiction when the defendant maintains "continuous and systematic" contacts with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984), such that they are "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). For a natural person, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The fact that an entity that is not based in a state engages in "a substantial, continuous, and systematic course of business" in the state is not alone sufficient. *See Daimler AG*, 571 U.S. at 137–38 (finding such a rule "unacceptably grasping").

5

Here, MBUSA is a limited liability company organized under the laws of Delaware with its principal place of business in Georgia, and there is no claim that it is a citizen of Maryland. It is also undisputed that Psillakis is not a citizen or resident of Maryland. Although Lacey has alleged that both of these defendants "take part in the regular marketing and distribution of [Mercedes-Benz] automobiles, including the vehicle subject of this case, in Maryland," Compl. ¶ 13, such contacts are insufficient to demonstrate that MBUSA and Psillakis have contacts that are so "continuous and systematic" that they are "essentially at home" in Maryland as required for general jurisdiction. *Daimler AG*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 919) (finding no general jurisdiction over a foreign car manufacturer in California even though its subsidiary had multiple facilities in California and sold 10 percent of its cars there, based primarily on the fact that neither the manufacturer nor the subsidiary were incorporated in California or had its principal place of business there). Thus, MBUSA and Psillakis are not subject to general personal jurisdiction in Maryland.

### 2.    Specific Jurisdiction

A court has specific personal jurisdiction when the defendant has "purposefully established minimum contacts in the forum State such that [it] should reasonably anticipate being haled into court there." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In assessing whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *ALS Scan, Inc.*, 293 F.3d at 712)). A plaintiff must prevail on each prong. *Id.*

6

### a.    MBUSA

Beginning with MBUSA, Lacey's primary allegations on the first prong of the specific personal jurisdiction analysis, purposeful availment, are that MBUSA "is responsible for the distribution and marketing of Mercedes-Benz vehicles in the United States," "including the vehicle subject of this case," and including "in Maryland." Compl. ¶¶ 3, 13. Lacey relatedly asserts, in her memorandum in opposition to the Motion, that MBUSA "regularly transacts business in Maryland, distributing and selling vehicles, marketing directly to Maryland consumers, and maintaining long-standing business relationships with Maryland dealerships." Opp'n at 5, ECF No. 35. Defendants present no facts to the contrary.

As the United States Supreme Court has recognized, "a defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition— as where manufacturers or distributors 'seek to serve' a given State's market." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). In the context of a vehicle manufacturer or distributor, the Supreme Court has stated that purposeful availment can consist of "actively seek[ing] to serve the market for automobiles" in a state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.* ("*Ford*"), 141 S. Ct. 1017, 1026 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). Lacey's allegations that MBUSA is responsible for distributing and marketing Mercedes-Benz vehicles in Maryland, as well as her references to the multiple Mercedes-Benz "factory-authorized" dealerships in Maryland from which she sought service on the GL550, Compl. ¶ 19, are thus sufficient to establish purposeful availment of the privilege of conducting activities in Maryland. *See Ford*, 141 S. Ct. at 1026; *Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *1, *3 (4th Cir. Jan. 6, 2022) (concluding that a "motorcycle distributor" had

purposefully availed itself of a forum by, "among other activities, marketing, advertising, and providing extended service contracts for its products there").

The second due process requirement is that the plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1026 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). This standard does not mean "that only a strict causal relationship between the defendant's in-state activity and the litigation will do," as "some relationships will support jurisdiction without a causal showing." *Id*. Still, the standard "does not mean anything goes." *Id.* "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*

In *Ford*, the Supreme Court considered two products liability actions against Ford Motor Company ("Ford") in which the plaintiffs had suffered injuries in the forum states as a result of alleged defects in their vehicles. *See id.* at 1028. The Court held that the plaintiffs had established that Ford was subject to specific personal jurisdiction in the forum states because Ford had "systematically served a market" in the forum states "for the very vehicles that the plaintiffs alleged malfunctioned and injured them in those states." *Id.* Indeed, the Court noted that, in *Daimler AG*, it had previously used "this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident) as an illustration—even a paradigm example—of how specific jurisdiction works." *Id*. (citing *Daimler AG*, 571 U.S. at 127 n.5). Significantly, the Court noted that specific jurisdiction is not limited to forum states "where the car was designed, manufactured, or first sold" and specifically held that such jurisdiction existed in that case even though Ford had sold "the specific cars involved in the crashes outside the forum States," which were then later sold by others to the plaintiffs. *Id.*

8

Here, Lacey, who resides in Maryland, alleges that MBUSA systematically serves a market in Maryland for the very vehicle at issue, that she purchased the GL550 from EMG in Maryland, and that it apparently had an engine failure in Maryland that resulted in the harm giving rise to Lacey's claims in Maryland. Under *Ford*, this is sufficient to satisfy the second prong of the specific personal jurisdiction analysis. *See id.*

The third due process requirement considers the constitutional reasonableness of exercising personal jurisdiction by evaluating several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In *Ford*, the Supreme Court found that exercising personal jurisdiction over Ford was constitutionally reasonable in part because "[a]n automaker regularly marketing a vehicle in a State . . . has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there," and because the forum states had "significant interests at stake" in providing their residents "with a convenient forum for redressing injuries inflicted by out-of-state actors." *Ford*, 141 S. Ct. at 1030; *see also Wallace*, 2022 WL 61430, at \*3 (finding that exercising personal jurisdiction over a motorcycle manufacturer for claims arising from an accident in that state was constitutionally reasonable because the company would not be placed "at a severe disadvantage" or face "grave difficulty or inconvenience" from litigating in that state, and because the state had "an interest in adjudicating a dispute in which one of its residents suffered harm"). Likewise, where Lacey has alleged that MBUSA conducts extensive business in Maryland and

that she purchased the GL550 and experienced the engine failure in Maryland, the Court concludes that litigating this suit in Maryland is constitutionally reasonable because MBUSA was on notice that it would be subject to jurisdiction in Maryland courts, it is not placed at a severe disadvantage or subject to grave difficulty or inconvenience, and Maryland has an interest in providing a forum to adjudicate a dispute arising from harm to one of its residents. *See Ford*, 141 S. Ct. at 1030; *Wallace*, 2022 WL 61430, at \*3. Defendants provide no argument that this Court's exercise of personal jurisdiction over MBUSA would be constitutionally unreasonable. Accordingly, Lacey has established that, as a due process matter, this Court may exercise personal jurisdiction over MBUSA.

### b. Psillakis

The Court reaches a different conclusion as to Psillakis. Unlike for MBUSA, Lacey does not allege that Psillakis "is responsible for the distribution and marketing of Mercedes-Benz vehicles in the United States." Compl. ¶ 3. Lacey's sole allegation suggesting that Psillakis has purposefully availed himself of the privilege of conducting activities in Maryland is the general claim that all defendants, including Psillakis, "take part in the regular marketing and distribution of [Mercedes-Benz] automobiles, including the vehicle subject of this case, in Maryland." *Id.* ¶ 13. This allegation, however, fails to identify the specific actions taken by Psillakis as part of such conduct, or to otherwise identify any specific contacts that Psillakis has had with Maryland. Instead, the only other allegation referencing Psillakis states that he "is a resident of Delaware and the CEO of Mercedes." *Id.* ¶ 4. Even in her memorandum in opposition to the Motion, Lacey asserts that Psillakis has purposefully availed himself of the privilege of conducting activities in Maryland based primarily, if not exclusively, on the fact that Psillakis is CEO of MBUSA and may

10

have participated in "corporate decisions" relating to sales, policies, and strategies "affecting Maryland consumers." Opp'n at 6.

The Court finds that these allegations do not support a finding of purposeful availment for two reasons. First, they focus on Psillakis's role as CEO and allege only general involvement in the company's activities, but specific personal jurisdiction must be established on the basis of each defendant's own contacts showing purposeful availment with a forum. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1783 (2017); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699–700 (D. Md. 2012) (stating that personal jurisdiction over a CEO "must be based on his personal contacts with the state of Maryland, not simply his status as" a co-defendant's CEO and finding that allegations that the CEO had "oversight and management responsibility" for the company's activities and "vague allegations of 'involvement' with" the company's activities are insufficient to establish personal jurisdiction).

Second, to the extent that Lacey asserts that Psillakis took actions that had effects in Maryland, the allegations do not support a finding of personal jurisdiction. On this point, Lacey's reliance on *Calder v. Jones*, 465 U.S. 783 (1984), which found that personal jurisdiction may sometimes be established when an out-of-state party engages in conduct that has effects in the forum state, is misplaced. *Id.* at 791. In *Calder*, the plaintiff brought a defamation suit in her home state of California against a newspaper reporter, as well as the president and editor of the Florida-based newspaper, based on the reporter's allegedly libelous article about her. *See id.* at 785–86. The Supreme Court concluded that the defendants were subject to personal jurisdiction in California because they had engaged in "intentional, and allegedly tortious, actions" that "were expressly aimed at California," specifically by writing and editing the libelous article while knowing that the effects of those activities were likely to have the greatest impact in California,

11

where the plaintiff lived and where the newspaper had its greatest circulation. *Id.* at 789–90. Here, Lacey has not and likely cannot plausibly allege that to the extent that Psillakis undertook any actions relating to the GL550 that arguably affected Maryland residents, he "expressly aimed" those actions at Maryland. *Id.* at 789. Accordingly, the Court concludes that Lacey has failed to allege sufficient facts to demonstrate that Psillakis purposefully availed himself of the privilege of conducting activities in Maryland, and that the claims against him in this case arose from such contacts with Maryland. The Court therefore finds that it may not exercise specific personal jurisdiction over Psillakis and need not and will not address the third prong of the personal jurisdiction inquiry. *See Perdue Foods LLC*, 814 F.3d at 189; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009) ("If the plaintiff satisfies prongs one and two, prong three comes into play.").

### C.     Maryland Long-Arm Statute

Finally, where the Court finds that the exercise of personal jurisdiction over MBUSA satisfies due process, it must consider whether it is permitted under the Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103 (LexisNexis 2020). Beyond their due process arguments, Defendants offer no specific argument that the requirements of this statute are not satisfied. As relevant here, the Maryland long-arm statute authorizes jurisdiction over a party that, "directly or by an agent" "[t]ransacts any business or performs any character of work or service in the State" or "[c]ontracts to supply . . . manufactured products in the State." *Id.* § 6–103(b)(1). If jurisdiction is based on the long-arm statute, the defendant "may be sued only on a cause of action arising from" one of the acts "enumerated in this section." *Id.* § 6–103(a). Here, for the reasons discussed above, *see supra* part I.B.2.a., and where Defendants offer no contrary argument, the Court concludes that Lacey has sufficiently alleged that MBUSA, as the entity alleged to be

12

responsible for distributing and marketing Mercedes-Benz vehicles in Maryland, either "[t]ransacts any business or performs any character of work or service in the State," "[c]ontracts to supply . . . manufactured products in the State," or both. Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1), (2). Further, and again for the reasons discussed above, the Court concludes that Lacey's claims arise out of these business transactions. *See supra* part I.B.2.a.

In summary, where the Court has concluded that it can exercise personal jurisdiction over MBUSA, the Court will proceed to address Lacey's claims against MBUSA. By contrast, where the Court has concluded that it cannot exercise personal jurisdiction over Psillakis, it will dismiss Lacey's claims against Psillakis. Accordingly, the Court need not and will not address Defendants' argument for dismissal pursuant to Rule 12(b)(5) for insufficient service of process as to Psillakis.

## II.    Failure to State a Claim

Defendants' remaining arguments for dismissal of Lacey's claims on the merits are asserted under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements

under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### A.    Class Action Claims

In the Motion, Defendants assert that Lacey may not maintain her class action claims because she is not represented by counsel. It is firmly established that a self-represented individual cannot adequately represent a class as required by Federal Rule of Civil Procedure 23(a)(4). *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *Lescs v. Martinsburg Police Dep't*, 138 F. App'x 562, 564 (4th Cir. 2005) (stating that "it is plain error to certify a class when a pro se litigant seeks to represent the class"). Lacey does not dispute this proposition but instead argues that it is premature to dismiss her class action claims because she is "actively seeking class counsel." Opp'n at 12–13. Lacey, however, has had over a year since this case was filed in July 2024 to retain class counsel and has failed to do so. In fact, during a case management conference on February 21, 2025, over six months ago, the Court advised Lacey that class action claims ordinarily are not viable when a plaintiff is proceeding without counsel, asked if Lacey was seeking to retain counsel, and warned her that if she did not do so her class action claims were unlikely to be able to proceed. Where Lacey has still failed to retain counsel despite that warning, the Court will dismiss Lacey's class action claims without prejudice.

### B.    Fraud Claims

Defendants also seek dismissal of Lacey's two fraud-based claims based on the failure to disclose the alleged defect in the M278 engine, consisting of the claim for a violation of the MCPA in Count 1 and the fraudulent concealment claim in Count 3. Defendants argue that these claims should be dismissed (1) because Lacey fails to state plausible claims under the heightened pleading standard for fraud-based claims set forth in Federal Rule of Civil Procedure 9(b); and (2) based on

14

the economic loss rule. Lacey does not dispute, and the Court finds, that Rule 9(b) applies to both of these claims. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (noting that an "MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 822 (D. Md. 2005) (applying Rule 9(b) to a claim of fraudulent concealment).

### 1. Rule 9(b)

Under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to this standard, a plaintiff must "allege 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019)). At the same time, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.* (quoting *Edmonson*, 922 F.3d at 553). Notably, in cases "involving alleged fraud by omission or concealment," courts must apply a "relaxed standard," such that "plaintiffs may partly rely on information and belief without running afoul of Rule 9(b)." *Id.* at 402. This "relaxed standard," however, "does not *eliminate* the particularity requirement." *Id.* (quoting *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987)).

Here, the Court concludes that Lacey has failed to allege the MCPA and fraudulent concealment claims with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standards. In *Corder*, even applying the relaxed standard for claims based on fraudulent omissions, the court held that the plaintiffs' allegations failed to meet the Rule 9(b) standard where they did

not adequately identify "the individual defendant who committed the fraudulent omissions or concealment" and found that they were inadequate in part because they referred "generally to 'defendants'" without identifying the specific individual responsible for the fraudulent conduct. *Id.* at 403. It also found a failure to comply with Rule 9(b) where the plaintiffs did not "allege a particular starting point" of the fraud "or explain why they lack sufficient information to do so." *Id.* at 402–03.

Here, Lacey has similarly failed to allege with particularity the specific individual who engaged in the fraudulent omission or concealment and instead generally pleads that the defendants collectively engaged in the misconduct. She also has not specified when and under what circumstances that act or omission occurred. Even if the Complaint could be construed liberally so as to be read as alleging that a fraudulent omission took place prior to Lacey's purchase of the GL550, the Complaint still lacks any particularity on the circumstances of that misconduct, including the identity of the perpetrator, the timing of the misconduct, and the circumstances of that action or inaction. In the absence of this information, the Court finds that Counts 1 and 3 have not been alleged with sufficient particularity as required by Rule 9(b).

Beyond these deficiencies, the Court further finds that Counts 1 and 3 are subject to dismissal for failure to state a claim because Lacey has not alleged sufficient facts relating to certain elements of these causes of action.

As to Count 1, the MCPA claim, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370, 380 (4th Cir. 2022) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). An "unfair or deceptive practice" includes the "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on

16

the same in connection with" the "promotion or sale of any consumer goods." Md. Code Ann., Com. Law § 13–301(9). Even assuming that Lacey has sufficiently alleged such an unfair or deceptive practice, she has failed to allege that she relied on such concealment or omission in making her purchase. *See Alexander*, 23 F.4th at 380 (concluding that the plaintiff failed to plead a valid MCPA claim based on a failure to plead reliance, even where the plaintiffs had conclusorily alleged that they "reasonably relied upon the direct and indirect material acts and actions of" the defendant). Thus, the Court will dismiss Lacey's MCPA claim on this separate ground as well.

As for the fraudulent concealment claim in Count 3, to assert such a claim, a plaintiff must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 274 (Md. 2007) (quoting *Green v. H & R Block*, 735 A.2d 1039, 1059 (1999)). Beyond the Rule 9(b) deficiencies, Lacey's allegations relating to this claim are insufficient for two additional reasons. First, as with the MCPA claim, Lacey has failed to allege reliance on the concealment or omission of a material fact. Second, Lacey has neither alleged nor provided any basis to conclude that Defendants owed her a duty to disclose the allegedly withheld information relating to the M278 engine. *See Kwintkiewicz v. Bentley Motors, Inc.*, No. 10-3212-WMN, 2011 WL 1336576, at *3 (D. Md. Apr. 7, 2011) (dismissing a fraudulent concealment claim where there were "no allegations or facts permitting the conclusion that [a vehicle manufacturer] has a fiduciary or special relationship with Plaintiffs or that [the vehicle manufacturer] has made partial representations to Plaintiffs resulting in a duty to disclose"). The Court therefore finds that Lacey has failed to state a valid claim for fraudulent concealment.

17

Where Lacey has failed to satisfy the heightened pleading standards for fraud-based claims under Rule 9(b), and where Lacey has further failed to plausibly allege each element of her fraud-based causes of action, the Court will dismiss without prejudice Counts 1 and 3 of the Complaint.

### 2. Economic Loss Rule

Defendants broadly assert that Lacey's claims should be dismissed because Lacey has not alleged any personal injuries and seeks only economic damages, so her claims conflict with the "economic loss rule," which generally provides that in products liability cases, "damages for economic loss are not available in a tort action and are recoverable, if at all, in contract causes of action and, in the case of fraud, in actions for deceit." *Lloyd*, 916 A.2d at 265. The Supreme Court of Maryland, formerly the Court of Appeals of Maryland, has recognized an exception to this rule when a defect in a product "presents a substantial, clear and unreasonable risk of death or personal injury." *Id.* at 266. In *Lloyd*, in which the plaintiffs asserted claims based on allegedly defective seats in a car that they contended were unsafe because they could have caused serious injuries during an accident, the court held that a fraudulent concealment claim alleging only economic loss could proceed under this exception. *Id.* at 262, 274–75. While Lacey has argued that there is an additional, broader exception for fraud claims, where *Lloyd* based its holding on the exception for "unreasonable risk of death or personal injury," the Court does not conclude that any exception for a fraudulent concealment claim exists beyond that identified in *Lloyd*. *Id.* at 275. Here, where Lacey's claim relates to a defect in a motor vehicle, it could potentially involve the kind of safety risk contemplated by the exception, but Lacey has not specifically alleged facts that demonstrate that the standard for applying that exception has been met. Accordingly, the economic loss rule provides an additional basis for dismissal of Counts 1 and 3.

18

### C.    Implied Warranty of Merchantability

Defendants assert that Lacey's claim in Count 2 for a breach of the implied warranty of merchantability must be dismissed for multiple reasons, including that it is time-barred by the applicable statute of limitations and otherwise fails to state a claim.

#### 1.    Statute of Limitations

As to Defendants' claim that Count 2 is time-barred, the applicable limitations provision states in relevant part that:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Md. Code Ann., Com. Law § 2–725.

The Maryland Supreme Court has held that, with respect to a claim based on the implied warranty of merchantability, "the ordinary rule is that the four years begins to run when the goods are delivered." *Washington Freightliner, Inc. v. Shantytown Pier, Inc.*, 719 A.2d 541, 544, 551 (Md. 1998). Accordingly, the limitations period on the implied warranty of merchantability claim began to run upon the purchase of the vehicle by Lacey from EMG in June 2019, and it therefore elapsed at the latest in June 2023. Where Lacey filed this case in state court in July 2024, Lacey's claim for breach of the implied warranty of merchantability would appear to be time-barred.

Lacey nevertheless argues that the statute of limitations should be tolled because she did not discover the defect in the M278 engine until 2023. In *Washington Freightliner*, however, the Maryland Supreme Court specifically held that there is no discovery rule applicable to claims for

19

breach of the implied warranty of merchantability, such that the cause of action "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* at 544 (quoting Md. Code Ann., Com. Law § 2–725); *see also Kline v. Hyundai Motor Am. Inc.*, 751 F. Supp. 3d 542, 563 n.13 (D. Md. 2024) (citing *Washington Freightliner*, 719 A.2d at 544–45). Accordingly, "the statute of limitations will always start to run against claims based on implied warranty from the time when delivery of the goods is tendered." *Washington Freightliner*, 719 A.2d at 545 (quoting William D. Hawkland, *Uniform Commercial Code Series* § 2–725:02, at 725 (1994)).

Lacey, however, also cites  to section 5–203 of the Maryland Courts and Judicial Proceedings Article, which provides that: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann., Cts. & Jud. Proc. § 5–203. Although Defendants claim that this provision applies only to fraud-based claims, the Maryland Supreme Court has recognized that it differs from the discovery rule and could apply to an implied warranty claim. *See Morris v. Osmose Wood Preserving*, 667 A.2d 624, 638 n.12 (Md. 1995) (declining to dismiss a warranty claim on statute-of-limitations grounds when section 5–203 was invoked); *Mathews v. Cassidy Turley Md., Inc.*, 80 A.3d 269, 288 (Md. 2013) (finding that a version of the discovery rule did not apply to toll the limitations period for a Maryland securities fraud claim but noting that section 5–203 could provide for tolling "on the basis of a defendant's fraudulent concealment" where there is "affirmative misconduct by the defendant, not just the exercise of due diligence by the plaintiff"). As discussed above, the Court finds that Lacey has not sufficiently pleaded a fraudulent concealment claim, including because she has not properly alleged a duty to disclose. *See Morris*,

667 A.2d at 638 n.12 (in discussing section 5–203, noting that non-disclosure is not sufficient to establish fraud absent a duty to disclose). In federal court, however, the statute of limitations is an affirmative defense, so Lacey is not obligated to plead sufficient facts to establish that the defense does not apply. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (stating that because the statute of limitations is an affirmative defense, a Rule 12(b)(6) motion "cannot reach the merits" of such a defense except "in the relatively rare circumstances where facts sufficient to rule on the affirmative defense 'clearly appear[] *on the face of the complaint*" (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993))). Moreover, as the Maryland Supreme Court has stated in relation to section 5–203, whether knowledge of a cause of action was hindered by fraudulent concealment is "a fact-intensive inquiry." *Mathews*, 80 A.3d at 288. Thus, at this early stage, the Court will not dismiss Count 2 based on the statute of limitations.

### 2.    Other Arguments

Beyond the statute-of-limitations argument, Defendants also assert that Lacey has not pleaded a plausible claim for a breach of the implied warranty of merchantability because she has not alleged "any facts to suggest she had experienced any issues with her vehicle prior to October 2022" and appears to have driven it while she was seeking repairs, such that the "only possible conclusion is that [Lacey's] vehicle fulfilled its intended purpose for three years before and even after the alleged incident." Mot. at 15, ECF No. 33-1.

In relation to a motor vehicle, the implied warranty of merchantability "not only warrants that the automobile will operate effectively, but that it will provide reasonably safe transportation." *Lloyd*, 916 A.2d at 285. For a claim of a breach of that warranty, a plaintiff "need only plead that the automobiles were sold with a defect and that the defect rendered the goods unfit for ordinary

21

and safe use." *Id.* at 290. Here, Lacey alleges that the GL550 contained "defective pistons and cylinder technology," which impacted "a critical component of the engine," caused "complete engine failure," and resulted in an "unexpected loss of power on the freeway." Compl. ¶¶ 16, 19, 34. Such a defect could constitute a breach of the implied warranty both because it prevented the vehicle from being "operat[ed] effectively" and because it rendered the vehicle unsafe for driving. *Lloyd*, 916 A.2d at 285. Although the fact that Lacey was able to drive the GL550 without incident for three years is a relevant fact, it does not preclude her claim. In *Lloyd*, in which the plaintiffs brought an implied warranty of merchantability claim based on allegedly defective seats in a car that would be unsafe in a collision, the Maryland Supreme Court reversed the dismissal of the claim even though the vehicle had been driven without incident and the relevant vehicle part had not yet malfunctioned, because the alleged defect arguably rendered the vehicle unsafe. *See id.* at 290. Similarly, the engine defect alleged by Lacey may not have resulted in an immediate malfunction, but if it existed and could render the vehicle unfit or unsafe for operation, and in her case did in fact result in such a malfunction, it could support an implied warranty claim. *See id.* Accordingly, the Court will not dismiss Count 2 on this basis.

Although Defendants' argument under the economic loss rule appeared to apply to all claims, in their reply brief, Defendants appear to limit this argument to the fraud claims only. *See* Reply at 11, ECF No. 36. To the extent that they did not, where implied warranty of merchantability claims sound in contract, not tort, the economic loss rule does not apply. *See Lloyd*, 916 A.2d at 285, 291 (identifying an implied warranty claim as a contract claim, noting that it is an implied term in the contract for sale, and finding that an economic loss is an injury for purposes of such a claim).

Lastly, Defendants argue that any implied warranty claim must be dismissed as to Defendant Weber because the implied warranty "only applies to a merchant seller," and Weber does not fall within that definition. Mot. at 15. Generally, an implied warranty of merchantability is "implied in a contract" for the sale of goods "if the seller is a merchant with respect to goods of that kind." Md. Code Ann., Com. Law § 2–314(1). A seller includes the "manufacturer, distributor, dealer, wholesaler or other middleman or the retailer" of the goods at issue. *Id.* § 2–314(1)(a). For purposes of products liability claims under Maryland law, including claims for a breach of an implied warranty of merchantability, liability applies to the "sellers," which consists of the "owners of personal property," including "a manufacturer, distributor, dealer, and retailer who own—*i.e.,* have title to—the products during the chain of distribution," while individuals or entities that "do not take title" to the property but instead "render services to facilitate that distribution or sale, are not sellers." *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 140–41 (4th Cir. 2019). Here, the allegations in the Complaint do not state or support the inference that Weber, who is the General Manager of EMG, ever personally took title to the GL550; rather, it is likely that he was an individual providing services to facilitate the sale of the vehicle and thus was not a "seller" for purposes of an implied warranty claim. *See id.* Indeed, while an implied warranty is an implied term of the sales contract, *see* Md. Code. Ann., Com. Law § 2–314(1), there is no allegation that Weber was a party to that contract. Accordingly, the Motion will be granted as to the claim against Weber in Count 2.

## III.   Remedies

Finally, Defendants assert that several of the remedies sought by Lacey are unavailable in this case. At this early stage in the litigation, however, where some of Lacey's claims have been dismissed without prejudice only, and where the factual record has yet to be developed, the Court

23

finds that it is premature to address arguments for dismissal of particular remedies. *See Sulton v. Baltimore Cnty.*, No. 18-2864-SAG, 2021 WL 948820, at *8 (D. Md. Mar. 12, 2021) ("Assessment of the types of damages that might be available if Plaintiffs eventually prevail on their claims is not well-suited to the relevant question presented in a Rule 12(b)(6) motion—whether Plaintiffs have adequately stated claims affording them some basis for relief."). Accordingly, the Motion will be denied without prejudice as to these arguments.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that the claims against Psillakis will be DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction, Counts 1 and 3 will be DISMISSED WITHOUT PREJUDICE, and Count 2 will be DISMISSED as to Weber. The Motion will otherwise be DENIED. A separate Order shall issue.

Date: September 5, 2025

THEODORE D. CHUANG
United States District Judge